UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| *In re Application of*<br><br>iFinex Inc.<br><br>      Applicant,<br><br>For the Issuance of a Subpoena for the Taking of a Deposition and the Production of Documents for use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 | Civil Action No.: _____ |

**DECLARATION OF GIANCARLO DEVASINI IN SUPPORT OF APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

I, Giancarlo Devasini, declare:

1. I am the Chief Financial Officer for iFinex Inc. ("iFinex") and have held that position during all relevant times mentioned in the following declaration. I submit this declaration in support of iFinex's Application to Conduct Discovery Pursuant to 28 U.S.C. § 1782, and based on my personal knowledge; the examination of records and documents contained in the files of iFinex and maintained in the regular course of business; and in certain matters and where so indicated, upon information and belief.

**iFinex's Business**

2. iFinex operates a leading global virtual currency platform operating

1

under the brand and trade name of Bitfinex, specifically, on and through www.bitfinex.com. Bitfinex provides a technology platform for customers—both business and individuals—to engage in the trade of digital tokens (e.g., bitcoin and Ethereum) using U.S. dollars, Euros, British pounds, and/or Japanese yen. iFinex is incorporated in the British Virgin Islands.

3. Before using Bitfinex's platform, customers must enter into a contract with Bitfinex agreeing to their terms of service, which are publicly available on the Bitfinex website. Customers wishing to deposit fiat currency—such as U.S. dollars, Euros, British pounds or Japanese yen—on the platform must go through an extensive due diligence process. iFinex also has in place standards to monitor transactions, assess risks, and file Suspicious Activity Reports (commonly referred to as a SAR) and other reports required by applicable law.

4. Customers who want to purchase virtual currency through Bitfinex using fiat currency must first deposit their funds into their Bitfinex account. Once fiat is deposited, they may trade those funds for digital tokens with other users. They may then withdraw those digital tokens. They may, alternately, withdraw unused fiat currency from Bitfinex or fiat currency that is the proceeds from future trading.

5. For these platforms to work, customers depend on iFinex's ability to receive and send fiat currency. This concept is similar, but not the same, to a customer of a U.S. financial institution having access to her money from a branch,

on demand.

6. Until early 2017, customers who sought to deposit fiat currency into their Bitfinex account could do so by interbank wire transfer, transferring funds from their own bank accounts into certain bank accounts held by iFinex in Taiwan. In early 2017, however, certain U.S. banks successfully pressured iFinex's Taiwanese banks into discontinuing this arrangement.

7. Without a readily available banking solution, iFinex turned to a third-party payment processor doing business as "Crypto Capital."

**iFinex's Agreement with Crypto Capital**

8. Crypto Capital marketed itself as enabling its customers to deposit and withdraw fiat funds instantly to certain virtual currency exchanges including, at the time, Bitfinex. In late 2014, Crypto Capital agreed to act as a payment processor[1] for the Bitfinex exchange, although the large majority of processing activity did not commence until 2017. That is, when Bitfinex customers sought to deposit fiat currency into their Bitfinex accounts, Bitfinex would provide customers with banking details to which the deposits were to be remitted by bank wire, as well as certain identifiers to include in the wire details. Crypto Capital represented that the accounts receiving customer deposits were owned and operated by Crypto Capital

---

[1] Broadly speaking, a "payment processor" is a third party that facilitates financial transactions between parties.

or its related entities.

9. Once Crypto Capital received funds transmitted, it would use the identifier to allocate deposits to a Bitfinex account and communicate receipt of the deposit to Bitfinex. Generally, Bitfinex would log onto the Crypto Capital platform to confirm that the wire was received and approve the deposit receipt. At that point, the funds were made available to the Bitfinex customer on the Bitfinex platform. Pursuant to the parties' agreement, Crypto Capital would hold these funds on behalf of Bitfinex, but would also transfer funds to Bitfinex on demand.

10. Customer withdrawals processed by Crypto Capital were handled similarly. A Bitfinex customer would submit a withdrawal request to Bitfinex. Bitfinex would log onto the Crypto Capital platform and fill in the beneficiary details provided by the customer. Bitfinex would then approve the withdrawal request and Crypto Capital would settle the withdrawal by remitting the funds to the Bitfinex customer from a bank account owned by Crypto Capital.

11. As part of the parties' agreement, besides a nominal fee for each deposit or withdrawal, Crypto Capital charged no fee for these services to iFinex because it was able to earn substantial interest on the funds it held on iFinex's behalf in its accounts. Crypto Capital's agreement to act as a payment processor was made by one of its principals—an individual who identified himself to me as Oz "Joseph." In 2019, I learned that Mr. Joseph's last name was actually "Yosef." Yosef was my

primary contact at Crypto Capital and I had numerous communications with him by phone and text from the 2017 through early 2019.

**iFinex Begins to Discover Crypto Capital's Malfeasance**

12. From early 2017 through late 2018, Bitfinex customers transferred more than $1.5 billion to various bank accounts purportedly held or controlled by Crypto Capital. By July 2018, the amount Crypto Capital held and owed to iFinex exceeded $1 billion. I believe there were largely two reasons for this large balance: (1) an increasing interest in virtual currency trading and investment, leading to increasing amounts being transferred by Bitfinex customers; and (2) institutional constraints on the amount of funds that could be transferred between Crypto Capital accounts and iFinex's bank accounts.

13. Our relationship with Crypto Capital generally operated well. In or about March or April 2018, however, we learned from news reports that Crypto Capital funds had been seized by authorities in Poland as part of an investigation into potential money-laundering. At the time, Yosef acknowledged to me that Crypto Capital's Polish bank accounts had been frozen, but claimed that none of iFinex's funds were affected by these actions.

14. In or about late August 2018, however, Yosef began representing to me that approximately $500 million of Bitfinex funds in both Poland and Portugal were being "held up" by regulators in both countries. From then through November 2018,

Yosef repeatedly reassured me that the Bitfinex funds held in Poland and Portugal were on the verge of being released and that Crypto Capital was working diligently with local authorities to secure their release.

15. In response to increasing pressure from iFinex and its attorneys for specific information concerning the banking accounts that had been purportedly frozen, Yosef began providing additional information in the latter part of 2018.

### Current, Ongoing Foreign Proceedings Involving iFinex

16. According to Crypto Capital, approximately $355,000,000 of iFinex's funds are being held in various currencies that were on deposit in accounts at Bank Spoldzielczy in Skierniewice, Poland. According to Crypto Capital, approximately $218,000,000 of Plaintiffs' funds are being held in various currencies in accounts at three separate Portuguese banks: Banco Português de Investimento ("Banco BPI"), Bankinter, S.A. ("Banco BIC"), and Caixa Geral de Depositos SA.

17. Since these and other subsequent disclosures, as well our own further investigation, we have been able to confirm that the National Prosecutor's Office in Poland has seized certain funds held by Crypto Capital in Bank Spoldzielczy. iFinex has filed a claim with the Prosecutor's Office as an "Injured Party" seeking to recover funds that Crypto Capital held in Poland on their behalf. iFinex also filed a civil claim against a Polish entity affiliated with Crypto Capital that was the authorized holder of the accounts at issue located in Poland. Additionally, iFinex

filed two criminal notifications against the representatives of the Polish entity affiliated with Crypto Capital concerning fraud and appropriatio.

18.   With respect to the funds held in the Portuguese banks identified above, we have filed an application for a protective order with the Court of Cascais in the Judicial Court of Western Lisbon against Global Trade and two other related companies (Eligibility Criterion and MOGW) to prevent the dissipation of funds held with Caixa Geral de Depósitos, Banco BPI and Banco BIC. We have also filed a separate application for protective order against the principals of those companies. iFinex intends to initiate a legal suit for recovery of those funds with the same.

19.   We have also learned that Crypto Capital maintained accounts with HSBC Bank PLC ("HSBC UK") in the United Kingdom. iFinex anticipates bringing a subsequent suit in the United Kingdom in order to recover the funds.

20.   Based on my communications with Yosef and to the best of our understanding of the limited banking records he has provided, Crypto Capital did not simply receive customer deposits into its various banking accounts and maintain those deposits with the initial bank receiving those funds. Rather, Crypto Capital subsequently transferred funds between and among various banks, including in Europe and the United States. In the U.S. alone, we have information that Crypto Capital used accounts held not only at SunTrust, but also Bank of America, Bank of Colorado, Citibank, Enterprise Bank & Trust, HSBC, Stearns Bank, Wells Fargo,

TD Bank, and US Bank.

21. Thus, in order to demonstrate iFinex's ownership of and entitlement to the various funds held in Poland, Portugal, and the United Kingdom, iFinex must be able to trace the funds deposited by its customers through the fund transfers between and among the various banking accounts operated or used by Crypto Capital. iFinex also seeks information regarding the ownership and use of the accounts at issue, as well as communications between the banks and account holders and/or their representatives.

**Crypto Capital's Use of Citibank Banking Accounts**

22. From approximately April to June 2018, Crypto Capital used a bank account ending in -9503 with Citibank to accept deposits from Bitfinex customers. The account was held in the name of Global Trading Solutions, LLC. Because the name of this LLC was similar to that of the entity that then owned Crypto Capital (Global Trade Solutions AG), we believed the LLC to be an entity related to Crypto Capital.

23. Since December 2018, we have subsequently learned through iFinex's investigation and review of its corporate filings that Global Trading Solutions, LLC is wholly owned by an individual named Reginald Dennis Fowler. Prior to December 2018, neither Yosef nor Crypto Capital had ever revealed Mr. Fowler's involvement in its operations. Yosef only admitted as much to me in or about late

December 2018 and thereafter.

24. Attached hereto as **Exhibit "A"** is a copy of the categories of documents that iFinex currently intends to seek from SunTrust.

25. SunTrust's corporate headquarters is located at 303 Peachtree Street, Northeast Atlanta, Georgia 30308.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 10th day of April 2020, at 4:30 PM.

_____
Giancarlo Devasini