IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| *In Re Application of* **IFINEX INC.**, *for the Issuance of a Subpoena for the Taking of a Deposition and the Production of Documents for use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782.* | MISC. ACTION FILE<br><br>No. 1:20-mi-00042-JPB-AJB |

# O R D E R

Before the Court is an *ex parte* petition for assistance in aid of a foreign proceeding, filed pursuant to 28 U.S.C. § 1782 by applicant iFinex Inc. ("Applicant"). [Doc. 1]. Upon a review of the record, the Court **DENIES** the petition.

## I.  Background

In support of its petition, Applicant proffers a declaration of its Chief Financial Officer, Giancarlo Devasini, in which Mr. Devasini explains that Applicant is incorporated in the British Virgin Islands and operates a global virtual currency platform under the brand name of Bitfinex, through www.bitfinex.com. [Doc. 1-1 ¶¶ 1, 2]. He states that in 2014, Applicant entered into an agreement with a third-party payment processor doing business as "Crypto Capital" and that in early 2017, Applicant began using Crypto Capital to accept, hold, and transfer

money deposits of Bitfinex customers who sought to trade in virtual currency. [*Id*. ¶¶ 3-10].  He asserts that Crypto Capital's agreement with Applicant was made by one of Crypto Capital's principals—an individual who identified himself to Mr. Devasini as Oz Joseph.  [*Id*. ¶ 11].  Mr. Devasini also indicates that Mr. Joseph was his primary contact with Crypto Capital.  [*Id*.].

Mr. Devasini states that although Applicant's relationship with Crypto Capital generally operated well, Applicant learned from news reports in or about March or April 2018 that Crypto Capital funds had been seized by authorities in Poland as part of an investigation into potential money-laundering.  [*Id*. ¶ 13].  He says that Mr. Joseph acknowledged to him at the time that Crypto Capital's Polish bank accounts had been frozen but that Mr. Joseph claimed that none of Applicant's funds had been affected.  [*Id*.].

Mr. Devasini avers that around that same time, from approximately April to June 2018, Crypto Capital used a Citibank bank account ending in -9503 to accept deposits from Bitfinex customers.  [*Id*. ¶ 22].  He states that the account was held in the name of Global Trading Solutions, LLC, which was similar to the name of the entity that then owned Crypto Capital (Global Trade Solutions AG).  [*Id*.].

Mr. Devasini testifies that in or around late August 2018, Mr. Joseph began representing to Mr. Devasini that approximately $500 million of Bitfinex funds in

2

both Poland and Portugal were being "held up" by regulators in both countries, that Crypto Capital was working diligently with local authorities to secure their release, and that the funds were on the verge of being released. [*Id*. ¶ 14]. Mr. Devasini states that in response to increasing pressure from Applicant and its attorneys for specific information concerning the banking accounts that purportedly had been frozen, Mr. Joseph represented in the latter part of 2018 that approximately $355,000,000 of Applicant's funds were being held in various currencies on deposit in accounts at Bank Spoldzielczy in Skierniewice, Poland, and approximately $218,000,000 of Applicant's funds were being held in various currencies in accounts at three separate Portuguese banks: Banco Português de Investimento ("Banco BPI"), Bankinter, S.A. ("Banco BIC"), and Caixa Geral de Depositos SA. [*Id*. ¶¶ 15-16]. Mr. Devasini also avers that in or around December 2018, Applicant learned that Global Trading Solutions, LLC, is wholly owned by an individual named Reginald Dennis Fowler, whose involvement had not previously been disclosed, [*id*. ¶ 23], and that in 2019, Mr. Devasini learned that Mr. Joseph's last name was actually Yosef, [*id*. ¶ 11].

As to the funds held in Polish banks, Mr. Devasini testifies that Applicant has been able to confirm that the National Prosecutor's Office in Poland seized certain funds held by Crypto Capital in Bank Spoldzielczy; that Applicant filed a

3

claim with the Prosecutor's Office as an "Injured Party" seeking to recover funds that Crypto Capital held in Poland on its behalf; that Applicant filed a civil claim against an Polish entity affiliated with Crypto Capital that was the authorized holder of the accounts at issue located in Poland; and that Applicant additionally filed two criminal notifications against the representatives of the Polish entity affiliated with Crypto Capital concerning fraud and appropriation. [*Id.* ¶ 17]. With respect to the funds held in the Portuguese banks, Mr. Devasini testifies that Applicant filed an application for a protective order with the Court of Cascais in the Judicial Court of Western Lisbon against "Global Trade" and two other related companies (Eligibility Criterion and MOGW) to prevent the dissipation of funds held with Caixa Geral de Depósitos, Banco BPI and Banco BIC, and that it also filed a separate application for protective order against the principals of those companies and intends to initiate a lawsuit for recovery of the funds. [*Id.* ¶ 18]. Mr. Devasini additionally testifies that Applicant also learned that Crypto Capital maintained accounts with HSBC Bank PLC ("HSBC UK") in the United Kingdom and that it anticipates bringing a lawsuit in the United Kingdom in order to recover the funds. [*Id.* ¶ 19].

      Mr. Devasini avers that based on his communications with Mr. Yosef and to the best of Applicant's understanding of the limited banking records Mr. Yosef has

provided, Crypto Capital did not simply receive customer deposits into its various banking accounts and maintain those deposits with the initial bank receiving those funds, but instead it transferred funds between and among various banks, including banks in Europe and the United States. [*Id*. ¶ 20].  Mr. Devasini alleges that Applicant has information that in the U.S. alone, Crypto Capital used accounts held at SunTrust, Bank of America, Bank of Colorado, Citibank, Enterprise Bank & Trust, HSBC, Stearns Bank, Wells Fargo, TD Bank, and US Bank. [*Id*.].

Mr. Devasini contends that in order for Applicant to demonstrate its ownership of and entitlement to the various funds held in Poland, Portugal, and the United Kingdom, it must be able to trace the funds deposited by its customers through fund transfers among the various banking accounts operated or used by Crypto Capital. [*Id*. ¶ 21].  Applicant therefore brings this application for the issuance of a subpoena for the taking of a deposition and production of documents for use in a foreign proceeding, by which it requests the Court to enter an order allowing it to take the deposition of SunTrust Bank ("SunTrust") and to obtain certain documents. [Doc. 1].  Mr. Devasini asserts that SunTrust's corporate headquarters is located in this district at 303 Peachtree Street, Northeast, Atlanta, Georgia 30308. [Doc. 1-1 ¶ 25].

5

## II. Law

Chapter 28 of the United States Code, section 1782, authorizes this Court to order the production of evidence for use by a foreign tribunal. 28 U.S.C. § 1782. Notably, the legislative history of 28 U.S.C. § 1782 reveals it was drafted to assist foreign tribunals in resolving foreign disputes, and Congress intended to "strengthen the power of district courts to respond to requests for international assistance." *In re Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007) (citation omitted). Pursuant to § 1782(a), the undersigned has authority to grant a request for judicial assistance when the following requirements are met:

> (1) the request must be made by a foreign or international tribunal, or by any interested person; (2) the request must seek evidence, whether it be the testimony or statement of a person or the production of a document or other thing; (3) the evidence must be for use in a proceeding in a foreign or international tribunal; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d at 1331-32 (internal citations omitted). Section 1782 is designed to support claims initiated by a private party in a foreign tribunal even when said proceedings are contemplated but have not yet commenced. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (11th Cir. 2004).

Even when the statutory requirements of § 1782 have been satisfied, the Court is not required to allow the discovery. Instead, the Court must consider

6

several additional factors and exercise its discretion as to whether to permit the discovery. *In re Clerici*, 481 F.3d at 1334.  The required factors include:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, because the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is otherwise unduly intrusive or burdensome.

*Id.* (internal quotations omitted) (quoting *Intel*, 542 U.S. at 264-65).

### III.   Analysis

The Court finds that the requirements of § 1782 have not been met.  First, Applicant has not shown that "the person from whom discovery is sought" resides or is found in this district.  While Mr. Devasini has testified that SunTrust corporate headquarters are located in this district, he has not established that his testimony is based on personal knowledge.  [*See* Doc. 1-1 ¶ 25].  Indeed, the Court's own research indicates that SunTrust Bank merged with Branch Banking and Trust Company in December 2019 and that the resulting entity, Truist Bank, is

7

headquartered in Charlotte, North Carolina. It therefore appears that Applicant has filed its petition in the wrong district.

Even if Applicant had shown that SunTrust Bank still exists and is headquartered or otherwise "resides" or "is found" in this district, the petition would still be due to be denied, as the proposed subpoena is addressed not to SunTrust Bank (or Truist Bank) but instead to Citibank, N.A. [Doc. 1-2 at 4, ¶¶ AA].

Applicant also has supplied no evidence indicating that the majority of the documents sought are in any way related to the foreign proceedings described by Mr. Devasini: the proposed subpoena demands records and communications pertaining to SunTrust Bank account numbers 209364251 and 810455498, Crypto Capital Corp.,[1] Diana Fletcher, Trent Dennis Fowler, G.T.S. Resources Limited, Katsuyohi Iwanaga, Ivan Manuel Molina Lee, Rondell "Rohn" Clyde Monroe, NLE Consulting Group, Ravid Yosef, Spiral Global Development Limited, David Anthony Stafford, and TCA Investment Bancorp & Trust Company, but there is no mention in Mr. Devasini's declaration of any of these people or entities. [*Compare*

---

[1] Mr. Devasini refers to "Crypto Capital" but not to an entity by the name of "Crypto Capital Corp." [*See generally* Doc. 1-1].

Doc. 1-1 *with* Doc. 1-2]. Consequently, there is no proof that much of the evidence sought is relevant to the foreign proceedings.

Additionally, while Applicant states in its proposed subpoena that "[t]he relevant time for purposes of this Subpoena is from November 1, 2016, through the present," [Doc. 1-2 at 5, ¶ II], the subpoena does not make clear that the requests for production are limited to that time period, [*see id*. at 6-8]. Thus, even if the requests were filed in the proper district, were addressed to the proper respondent, and were shown to pertain to the foreign proceedings at issue, the requests appear to be unduly intrusive and burdensome.

## IV.  Conclusion

For the reasons set forth above, the Court **DENIES** the *ex parte* petition for assistance in aid of a foreign proceeding. [Doc. 1]. If no further matters are submitted to the Court in this action within thirty (30) days of the date of this Order, the Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge and close this case.

**IT IS SO ORDERED AND DIRECTED**, this the 8th day of June, 2020.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE